[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-------------------------------------------
No. 00-11190
-------------------------------------------

D. C. Docket No. 93-08707 CV-KLR

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JUNE 15, 2001**
**THOMAS K. KAHN**
**CLERK**

TIRE KINGDOM, INC., a Florida
Corporation,

                                        Plaintiff-Appellant,


        versus


MORGAN TIRE & AUTO, INC.,
a Florida Corporation,
d.b.a. Don Olson Tire & Auto Centers, Inc.,
LARRY C. MORGAN, individually, et al.,

                                        Defendants-Appellees.


----------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
----------------------------------------------------------------
(June 15, 2001)

Before EDMONDSON, FAY and NEWMAN*, Circuit Judges.

_____

*      Honorable Jon O. Newman, U.S. Circuit Judge for the Second Circuit, sitting by
designation.

PER CURIAM:

Plaintiff Tire Kingdom challenges the district court's award of fees and costs to Defendants Bridgestone/Firestone, Inc., Morgan Tire and Auto, Inc. and Larry Morgan. We affirm.

## I.

Plaintiff, a large multi-brand tire dealer in Florida, sued Defendants for alleged violations of the Lanham Act and state law. Plaintiff alleged that Defendants engaged in "schemes of deceptive trade practices" through the use of false multi-brand advertising. The scheme allegedly involved advertising various brands of tires to attract customers to the store and, then, switching those customers to purchase Firestone tires.

The district court granted summary judgment for Defendants on the Lanham Act claim and dismissed without prejudice the state law claims. We affirmed. Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 136 F.3d 139 (11th Cir. 1998) (Table) (per curium).

While the merits appeal was pending with this court, Defendants filed for attorney's fees and costs. The district court granted the motion for fees and costs,

2

but stayed consideration of the amount of the fee award until we disposed of the then-pending appeal. After we affirmed summary judgment for Defendants, the district court determined the fee amount and awarded $328,501.59 in fees and $26,417.79 in costs to defendants Morgan Tire and Morgan and $372,615.00 in fees and $21,953.00 in costs to defendant Bridgestone. The court also awarded interest on the fee award from the date of the initial order granting the motion for fees to the date of payment.

## II.

As an initial matter, we address Plaintiff's argument that Defendants failed to file their motions for fees within 14 days after entry of judgment, as Fed. R. Civ. P. 54(d)(2)(B) requires. The fourteen-day limit applies "[u]nless otherwise provided by . . . order of the court . . . ." Id. The district court relied on local rule 7.3, which allows a motion for fees to be filed 30 days after judgment. S.D. Fla. L.R. 7.3. Plaintiff argues that the local rule conflicts with the federal rule and that the federal rule governs. See Fed. R. Civ. P. 83(a)(1) ("Each district court . . . may . . . make and amend rules governing its practice . . . consistent with [these] rules.").

We recently considered this issue in the context of a local rule from the Northern District of Florida that permitted a motion for attorney's fees to be filed and served within the time specified in the scheduling order. See Members First Fed. Credit Union v. Members First Credit Union of Florida, 244 F.3d 806 (11th Cir. 2001). We noted that the district court adopted the local rule pursuant to Fed. R. Civ. P. 83 and concluded that the local rule governing time to file a fee motion applied. Id. at 807. We likewise conclude that the time limit set out in local rule 7.3 is an "order of the court" that governs this case. Thus, Defendants timely filed their motions for fees. See also Jones v. Cent. Bank, 161 F.3d 311, 313 (5th Cir. 1998) (concluding 30-day filing deadline set by local rule applied to motion for attorney's fees); Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249, 1257 (9th Cir. 1997) (same); Johnson v. Lafayette Fire Fighters Ass'n, 51 F.3d 726, 729 (7th Cir. 1995) (same for 90-day local rule deadline).

## III.

We now turn to the substantive challenges to the award of fees and costs. We review an award of attorney's fees and costs for abuse of discretion. See Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1293 (11th Cir. 1999).

A.

Plaintiff first argues that the district court erred in determining that this case is an exceptional case justifying a fee award under the Lanham Act. See 15 U.S.C. §1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.") (emphasis added). We have previously said that an "exceptional case" is one that can be characterized as "malicious, fraudulent, deliberate and willful," Dieter v. B & H Indus. of S.W. Fla, Inc., 880 F.2d 322, 329 (11th Cir. 1989), or one in which "evidence of fraud or bad faith" exists, Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1169 (11th Cir. 1982).

Of the five elements necessary to prove a Lanham Act violation, the magistrate judge[1] concluded that Plaintiff could only have established one element: that the goods traveled in interstate commerce. In granting summary judgment on the Lanham Act claim, the district court concluded that Plaintiff failed to present "a scintilla of evidence" of materiality or reliance, which the court described as a

---

[1]The district court adopted and affirmed the magistrate judge's Report and Recommendation.

"fatal[] flaw[]" to Plaintiff's claim.[2] Also, even at the time of the motion for fees, when Plaintiffs needed only to show that the case was not "exceptional" for fee purposes, Plaintiff presented no evidence of causation or damages.

The magistrate judge also noted evidence of bad faith and improper motive on the part of Plaintiff. For example, Plaintiff had obtained market research and survey information that refuted causation and had failed to disclose this research and survey evidence to Defendants until one month before the scheduled trial date. Also, one of Plaintiff's vice-presidents testified that "[i]n 1995, we just took a leap of faith and started raising our prices in the paper, hoping that there was <u>enough pain and agony out there from the competition and this lawsuit</u> that maybe prices could go up there where we could show up our performance." (emphasis added by magistrate judge).

Plaintiff's failure to present sufficient evidence on four of the five Lanham Act elements, coupled with evidence of bad faith and improper motive, support the district court's conclusion that this case was an exceptional case justifying an

---

[2]Plaintiff had argued that no evidence of actual deception was required where the advertisements were false. The district court ultimately rejected that argument, and we affirmed. But even though what was required to establish this particular element of the Lanham Act claim may have been ambiguous based on earlier case law, the district court also concluded that none of the challenged advertisements were false, nor did any of the advertisements "distort, deceive, or mislead" regarding the "nature, quality, characteristics, or geographic origin" of Defendants' products.

award of attorney's fees.  We cannot say that the district court abused its discretion in awarding fees.

B.

Plaintiff also challenges, on a variety of grounds, the fee amounts awarded to Defendants.  After review of the magistrate judge and district judge's opinions as well as our own review of the record, we conclude that the district court properly applied the lodestar approach articulated in <u>Norman v. Hous. Auth. of the City of Montgomery</u>, 836 F.2d 1292 (11th Cir. 1988), to determine the fee award under the Lanham Act.  In many instances, the court reduced the amount requested for certain kinds of work or for certain costs.  The final determination of the fee award was no abuse of discretion.

We consider only one of Plaintiff's arguments as worthy of discussion: whether the district court erred in awarding fees based on an hourly rate that exceeded the hourly rate as set in a contract between the Morgan Defendants and their attorney.

The Morgan Defendants contracted with their attorneys for a fee of $160 per hour, which was below the "historical rate" (i.e. the maximum hourly rate

7

requested from a new client). The magistrate judge considered the fee agreement rate but concluded that the "historical rates more accurately reflect the prevailing market rate in this legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."

The lodestar approach requires the judge to determine a reasonable hourly rate. And the agreed-upon billing rate is a strong indication of a reasonable rate. But the agreed-upon fee rate does not necessarily act as a cap or ceiling in determining the reasonable hourly rate. Instead, as the magistrate judge correctly noted, an agreed-upon rate is relevant evidence to determine the fee rate, but it is not necessarily determinative. See Crescent Publ'g Group, Inc. v. Playboy Enter., Inc., 246 F.3d 142, 151 (2d Cir. 2001); Getty Petroleum Corp. v. Bartco Petrolaum Corp., 858 F.2d 103, 114 (2d Cir. 1988).

We are mindful that the old Fifth Circuit, in the context of explaining guidelines for district courts to consider when awarding fees, has said "[i]n no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to [that] amount." Johnson v. Georgia Hwy. Exp., Inc., 488 F.2d 714, 718 (5th Cir. 1974). But since Johnson, the Supreme Court has explained that, at least in the context of contingent fee arrangements, a fee agreement should not place a strict limit on a fee award. See

8

Blanchard v. Bergeron, 109 S. Ct. 939, 945-46 (1989) ("The trial judge should not be limited by the contractual fee agreement between plaintiff and counsel."). Instead, the reasonable hourly rate should be determined based on the reasonable worth of services rendered, so long as the rate results in no windfall for the prevailing party. Id. at 946.

Here, the district court rejected an hourly rate based on current rates and based on the negotiated rate. Instead, the judge concluded that the historical rates most accurately reflected the prevailing market rate. The overall difference between the negotiated rate and the historical rate is less than $1000. That the judge applied the historical rate instead of the negotiated rate was no abuse of discretion.

AFFIRMED.